**Albert MONTES, Plaintiff–Appellant,**

v.

**UNITED STATES of America,
Defendant–Appellee.**

**No. 92–55657.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 8, 1993.

Memorandum Filed Aug. 31, 1994.

Order and Opinion Filed Oct. 18, 1994.

Jeffrey Winter, National City, CA, for plaintiff-appellant.

Samuel W. Bettwy, Asst. U.S. Atty., San Diego, CA, for defendant-appellee.

Before: FLETCHER and D.W. NELSON, Circuit Judges, and WILL,* Senior District Judge.

### ORDER

The Memorandum decision filed August 31, 1994 is redesignated an authored opinion.

### OPINION

WILL, Senior District Judge:

Plaintiff Albert Montes appeals from the district court's dismissal of his action brought under the Federal Tort Claims Act, 28 U.C.C. § 1346, in which he sought damages for injuries he received when a vehicle being pursued by the United States Border Patrol struck his vehicle, 778 F.Supp. 19. At issue in this appeal is whether the plaintiff's notice of appeal was timely filed, thus giving this Court jurisdiction over the appeal, and, if so, whether the district court erred in dismissing Montes' action for lack of subject matter jurisdiction because Cal.Veh.Code § 17004.7 renders the United States immune from liability for the plaintiff's injuries. We find that appellate jurisdiction is proper, and we reverse the trial court's dismissal of the ac-

---

* Honorable Hubert L. Will, Senior United States District Judge for the Northern District of Illinois, sitting by designation.

tion based on the immunity provisions in Cal.Veh.Code § 17004.7.

# I.

## BACKGROUND

At approximately 1:30 a.m. on April 4, 1990, Plaintiff Albert Montes was injured when a vehicle being pursued at a high rate of speed by the United States Border Patrol collided with the plaintiff's eighteen-wheel tractor and totalled it. The driver absconded but was later arrested and charged for a felony hit-and-run, evading an officer, driving without a license, and receiving stolen property.

On March 22, 1991, the plaintiff brought suit against the United States pursuant to the Federal Tort Claims Act (the "FTCA" or the "Act"), 28 U.S.C. §§ 1346(b), 2671–80. The United States moved to dismiss the action for lack of jurisdiction, arguing that it is immune from liability under state law— namely, Cal.Veh.Code § 17004.7. This statute provides, in pertinent part, that:

> A public agency employing peace officers which adopts a written policy on vehicular pursuits complying with subdivision (c) is immune from liability for civil damages for personal injury to or death of any person or damage to property resulting from the collision of a vehicle being operated by an actual or suspected violator of the law who is being, has been, or believes he or she is being or has been, pursued by a peace officer employed by the public entity in a motor vehicle.

Cal.Veh.Code § 17004.7(b).

The district court granted the government's motion and on November 1, 1991, entered its Order and Judgment (the "First Judgment"), dismissing the plaintiff's complaint and the underlying action without prejudice. Shortly thereafter, however, on November 20, 1991, the district court judge signed the Stipulation/Order, allowing the "plaintiff leave to file the First Amended Complaint."

Rather than pursue an appeal from the First Judgment, the plaintiff filed an amended complaint on November 21, 1991, apparently in response to the Stipulation/Order.

This amended complaint was nearly identical to the original complaint, except for additional factual allegations concerning the Border Patrol agent's failure to turn on his emergency lights and siren, and failure to "conduct the pursuit under the guidance of a supervisor." First Amended Complaint at 2. Because the amended complaint clearly raised no new material issues, the United States moved for dismissal. The district court granted the government's motion and on April 14, 1992, entered its second Order and Judgment (the "Second Judgment"), granting the motion to dismiss the amended complaint and the underlying action based on the "law of the case" rule. The plaintiff filed his notice of appeal on May 4, 1992.

# II.

## DISCUSSION

### A. Appellate Jurisdiction

Following the district court's entry of a judgment dismissing an action, the appellant has 60 days to file a notice of appeal. 28 U.S.C. § 2107(b); Fed.R.App.P. 4(a). The government argues that this appeal should be dismissed because the plaintiff's notice of appeal was not timely filed. It is undisputed that the plaintiff's notice of appeal was not filed until May 4, 1992, more than 60 days after the entry of the district court's First Judgment, which was entered on November 1, 1991.

However, the plaintiff's notice of appeal was timely filed with respect to the district court's Second Judgment, which was entered on April 14, 1992. The Second Judgment dismissed the amended complaint and underlying action pursuant to the "law of the case" rule because the First Judgment disposed of all issues raised by the amended complaint. In his appeal, the plaintiff did not challenge the district court's application of the "law of the case" rule; instead, he raises only those issues addressed by the district court in its First Judgment.

The government argues that the First Judgment was intended as a final dismissal of an action without leave to amend, and was thus final and appealable. Accordingly, we

must first determine whether the First Judgment was a final and appealable order, from which the defendant had 60 days in which to file his notice of appeal. If the First Judgment was final and appealable, the plaintiff's notice of appeal was not timely and the appeal, which does not contest the court's application of the "law of the case" rule, should be dismissed for lack of jurisdiction. If, however, the court's First Judgment was not final and thus not appealable, we would not necessarily lack jurisdiction over this appeal.

■ It is well established that the finality requirement must be given a practical rather than a technical construction. *United States v. Lee,* 786 F.2d 951, 956 (9th Cir.1986) (citing *Gillespie v. United States Steel Corp.,* 379 U.S. 148, 152, 85 S.Ct. 308, 311, 13 L.Ed.2d 199 (1964)). In determining whether the district court's ruling was a final, appealable order, we focus on what effect the court intended it to have, rather than the label placed upon it. *See Zucker v. Maxicare Health Plans. Inc.,* 14 F.3d 477, 483 (9th Cir.1994) ("This court construes judgments with a view to 'give effect to the intention of the court....' "); *Ramirez v. Fox Television Station, Inc.,* 998 F.2d 743, 746 (9th Cir.1993) (holding that where grounds for dismissal ended the plaintiff's litigation on the merits, the dismissal was final and appealable); *Lee,* 786 F.2d at 955 (holding that the trial judge's characterization will not control the classification of the action, where the decision effectively terminates the litigation and appeal is the only avenue of review).

■ To determine the district court's intent, this Court has traditionally drawn a distinction between the dismissal of the complaint and the dismissal of the underlying action. Dismissal of a complaint alone is ordinarily not appealable unless the circumstances clearly indicate that the court determined that the complaint could not be saved by amendment. *Scott v. Eversole Mortuary,* 522 F.2d 1110, 1112 (9th Cir.1975). Dismissal of an action, on the other hand, is final and appealable. *Hoohuli v. Ariyoshi,* 741 F.2d 1169, 1171 n. 1 (9th Cir.1984) ("If it appears that the district court intended the dismissal to dispose of the action, it may be considered final and appealable.").

■ An initial examination of the language of the First Judgment suggests that the district court may have intended to dismiss the entire action:

> IT IS ORDERED AND ADJUDGED that the court finds that the United States is immune from liability for the plaintiff's injuries and thus orders the complaint and the underlying action dismissed for lack of jurisdiction, without prejudice.

Judgment of Nov. 1, 1991. Notwithstanding this language, however, the district court subsequently approved and signed the Stipulation/Order allowing the plaintiff to amend his original complaint. In this context, we conclude that the use of the words "without prejudice" in the First Judgment is ambiguous.

We have recently addressed the two possible jurisdictional implications of a dismissal without prejudice in *McGuckin v. Smith,* 974 F.2d 1050 (9th Cir.1992). First, where a dismissal permits the plaintiff to amend his complaint in the same action, it is ordinarily not appealable because the district court does not "leave[ ] nothing for the court to do but execute the judgment" *McGuckin,* 974 F.2d at 1053 (quoting *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 467, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978) (quoting *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945))). Alternatively, the effect of a dismissal without prejudice may be to "end the litigation in the court involved, but not to act as an adjudication on the merits or to bar the filing of a similar action in another court." *McGuckin,* 974 F.2d at 1053. In such a case, the dismissal would be final and appealable.

In this case, Judge Gilliam's statements at the hearings on the motions, and his subsequent signature on the Stipulation/Order evince a clear intent to permit the plaintiff to amend his complaint. At the hearing on the first Motion to Dismiss, held on October 7, 1991, the district court explicitly permitted the plaintiff to amend his complaint to include additional facts. The court stated:

> Well, there are some areas possibly where you might be able to get in. The equipment was not proper the officer was using.

Let's say the sirens or the lights were not in use. There are some areas that you might want to use. So I will dismiss it without prejudice. If you can come up with something—and feel free to do so.

Br. of Appellee, Attachment at 2. Following this discussion, and *after* entering the First Judgment dismissing both the complaint and underlying action without prejudice, the district court signed the Stipulation/Order which allowed the plaintiff to file an amended complaint.

We find the timing of the Stipulation/Order to be of particular importance to the issue of the trial court's intent. Because it was entered *after* the dismissal "without prejudice" in the First Judgment, we conclude that the First Judgment was not intended to be a final and appealable order. Taken together, the combined effect of the First Judgment and the Stipulation/Order was to grant the plaintiff leave to amend his original complaint. Accordingly, we conclude that the First Judgment was not a final and appealable order. Thus, appellate jurisdiction is not improper because the plaintiff's notice of appeal was timely with respect to the Second Judgment.

The government also notes that the plaintiff's notice of appeal mentioned only the district court's Second Judgment, which dealt with the "law of the case" rule, and failed to designate the First Judgment. Br. of Appellee at 5. However, as we recently observed in *Stuart v. United States*, 23 F.3d 1483, 1485 (9th Cir.1994) (quoting *Pope v. Savings Bank of Puget Sound*, 850 F.2d 1345, 1347 (9th Cir.1988)), "'a mistake in designating the judgment appealed from should not bar appeal as long as the intent to appeal a specific judgment can be fairly inferred and the appellee is not prejudiced by the mistake.'" From his briefs, it is clear that Montes intended to appeal from the court's First Judgment. Moreover, the government was in no way prejudiced in this appeal and addressed fully in its brief the merits of each issue raised in the plaintiff's appeal.

Accordingly, we have jurisdiction to consider this appeal.

**B.  Standard of Review**

In its First Judgment, the district court found that it lacked subject matter jurisdiction because the United States was immune from liability for the plaintiff's claim under the FTCA. The court's Second Judgment affirmed this ruling based on the "law of the case" rule. The existence of subject matter jurisdiction is a question of law that is reviewed *de novo*. *Kruso v. International Telephone & Telegraph Co.*, 872 F.2d 1416, 1421 (9th Cir.1989), *cert. denied*, 496 U.S. 937, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). Whether the United States is immune from liability in a FTCA action is a question of federal law subject to *de novo* review. *Stuart*, 23 F.3d at 1487.

**C.  Application of California Vehicular Code § 17004.7**

On appeal, the plaintiff argues that the district court erred in concluding that the United States was immune from suit under the California immunity statute—*Cal.Veh. Code § 17004.7*. Specifically, the plaintiff contends that *Cal.Veh.Code § 17004.7 is preempted by the Federal Tort Claims Act, the U.S. Constitution, and public policy.*

The precise question raised in this appeal has been answered recently by this Court in *Stuart*, 23 F.3d at 1487–88. In *Stuart*, the plaintiff and his son were injured, and the plaintiff's wife died, in an automobile collision when a Hyundai fleeing from United States Border Patrol agents crashed into the plaintiff's automobile. Like Montes, the plaintiff brought suit against the government under the FTCA. In granting judgment in favor of the United States, the district court judge applied Cal.Veh.Code § 17004.7(b) to find the United States immune from suit.

The trial court reasoned that this outcome was supported by *Aguilar v. United States*, 920 F.2d 1475, 1477 (9th Cir.1990), wherein a divided court held that "where the federal actor is a police officer without a private analogue, liability is determined by reference to state liability for government employees." In *Aguilar*, a Nevada state law limiting state liability for the negligence of its police officers to $50,000 was applied to limit the liabili-

ty of the United States in an action brought under the FTCA.

This Court disagreed on appeal, finding that *Aguilar* was distinguishable because it involved a state law imposing a monetary cap on liability rather than a state law granting immunity from liability. *Stuart*, 23 F.3d at 1488. The court explained:

> The Ninth Circuit has refused to grant immunity to federal officers based on state statutes that confer public entity immunity for the conduct of government employees in an action against the United States under the FTCA. *Wright* [*v. U.S.*], 719 F.2d [1032] at 1034-35 [ (9th Cir.1983) ]. *Wright* relied on a string of Supreme Court cases holding that state law immunity from liability does not apply to the United States in an action under the FTCA. *See United States v. Muniz*, 374 U.S. 150, 10 L.Ed.2d 805, 83 S.Ct. 1850 (1963); *Indian Towing Co. v. United States*, 350 U.S. 61, 100 L.Ed.2d 48, 76 S.Ct. 122 (1955). In *Indian Towing*, the Court declared that the FTCA was "not self-defeating by covertly embedding the casuistries of municipal liability for torts." *Id.* at 65 [76 S.Ct. at 125]. The Court went on to warn: the Court should not "as a self-constituted guardian of the Treasury import immunity back into a statute designed to limit it." *Id.* at 69, [76 S.Ct. at 126].

> Because of the Supreme Court's clear teaching that the "casuistry of municipal law" should not be incorporated into the Federal Tort Claims Act, we hold that California Vehicle Code § 17004.7 does not apply to the United States in an action under the FTCA.

*Id.*

In light of this Court's recent holding in *Stuart* and the precedents discussed therein, we agree with Montes that the district court erred in dismissing this action based on the application of Cal.Veh.Code § 17004.7 immunity to the government.

Accordingly, we reverse and remand for further proceedings.

## III.

### CONCLUSION

For the foregoing reasons, we find appellate jurisdiction to hear the plaintiff's appeal, and we reverse and remand.

REVERSED and REMANDED.